# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JAMES C. SPENCER**
Datillo Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Apr 01 2014, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL E.  MCCLELLAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A04-1305-CR-248 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause No. 39D01-1005-CM-401

**April 1, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

In this interlocutory appeal, Michael McClellan appeals the trial court's denial of his motion to dismiss the charge pending against him. McClellan raises one issue, whether the trial court erred in denying his motion to dismiss because his right to a speedy trial under the federal and state constitutions was violated.[1] Concluding the trial court failed to evaluate McClellan's speedy trial claim under the appropriate framework, we remand for a new hearing on McClellan's motion to dismiss.

## Facts and Procedural History

In February 2009, McClellan was arrested for operating a vehicle while intoxicated and spent the night in jail ("February OWI"). The State filed charges in Jefferson Superior Court. On August 2, 2009, while the February OWI case was pending, McClellan was stopped on suspicion of operating a vehicle while intoxicated ("August OWI"). Due to a medical condition, McClellan was unable to take a breath test. McClellan consented to a blood draw and was driven to his home in Hanover by the investigating officer after the blood draw. The officer knew that McClellan required an oxygen tank but would not have access to it in jail, which would create a medical hardship. At the time, McClellan's license reflected a home address in Milton, Kentucky.[2] McClellan told his attorney, who was representing him on the February OWI, of the blood draw in connection with the August OWI.

---

[1] McClellan does not raise any claim under Indiana Criminal Rule 4.

[2] McClellan moved to Kentucky for a brief time while he was separated from his wife and updated his license to reflect the change in address; once he was placed on home detention he moved back to his marital residence in Hanover and remained there.

By December 2009, McClellan had not received any toxicology results in connection with the August OWI. Neither he nor his attorney asked the State about the status of that possible case; McClellan assumed that the absence of information meant he was not going to face charges. On December 23, 2009, he pled guilty to the February OWI. His plea agreement called for a one year executed sentence, with placement open to argument. McClellan argued, and the court agreed, that his health prevented him from being able to withstand a jail sentence, and the court sentenced him to one year of home detention. McClellan was required to have a land-line phone to be monitored by an electronic ankle bracelet while on home detention. He returned to Hanover from Kentucky for the duration of his sentence. McClellan was discharged in January 2011 after successfully completing home detention and has lived at the Hanover address ever since.

On May 25, 2010, after receiving the toxicology report just two days prior, the State charged McClellan with operating a vehicle while intoxicated, a Class A misdemeanor, and operating a vehicle while intoxicated, a Class C misdemeanor, for the August OWI. These charges were brought in Jefferson Superior Court, the same court that heard McClellan's February OWI case. The court issued a summons to McClellan at his Milton, Kentucky address as listed on his license at the time of the offense. The sheriff did not serve the summons, and it was returned as "NOT OUR COUNTY." Appendix at 1. A second summons was returned "NOT SERVED . . . DEFENDANT NO LONGER LIVES AT THAT ADDRESS." Id. McClellan did not appear at his initial hearing in July 2010. The court then issued an arrest warrant and listed McClellan's Kentucky address. After that warrant expired, the court issued a second arrest warrant in March 2011. Like the

others, it listed McClellan's Kentucky address.  The summons and first warrant were issued while McClellan was on home detention in Hanover.

McClellan was eventually served with the warrant in November 2012 at his home in Hanover.[3]  At the initial hearing on November 5, the court agreed to the arresting officer's request that McClellan be allowed to appear voluntarily due to his medical conditions.[4]  McClellan filed a motion to dismiss on December 28, 2012, and an amended motion to dismiss on January 10, 2013, alleging his due process rights were violated by the delay from the time of the traffic stop until the time he was brought to court.  A hearing was held on the motion, and for the first time, McClellan argued that his right to a speedy trial was violated in addition to his due process rights.  On March 25, 2013, the trial court denied the motion to dismiss, reasoning that it was appropriate for the State to wait for the toxicology report before charging McClellan, and that the charges were filed within the statute of limitations.  The trial court further reasoned that the address the summons and warrant listed was that which McClellan provided to police at the time of the offense, and that the State had no affirmative duty to research the changed address.

McClellan filed a petition to certify the order for interlocutory appeal and a stay of the proceedings, and the trial court granted the petition. This court then accepted jurisdiction of the interlocutory appeal.

---

[3] The record is silent as to what prompted service at this address.

[4] McClellan suffers from chronic obstructive pulmonary disease (COPD), sleep apnea, kidney failure, diabetes, and bladder issues.

4

Discussion and Decision

## I. Standard of Review

The issue here is whether the trial court erred in denying McClellan's motion to dismiss based on a violation of his right to a speedy trial under the Sixth Amendment and Article 1, Section 12 of the Indiana Constitution.  The standard of review for a speedy trial issue, which is a pure question of law, is de novo.  Cundiff v. State, 967 N.E.2d 1026, 1027 (Ind. 2012).  The analysis of a claim involving a speedy trial right is the same under both the state and federal constitutions.  Sweeney v. State, 704 N.E.2d 86, 102 (Ind. 1998), cert. denied, 527 U.S. 1035 (1999).  The inquiry into whether there was a speedy trial violation involves balancing four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right to a speedy trial; and 4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530; Vermillion v. State, 719 N.E.2d 1201 (Ind. 1999). The four factors are related and

> must be considered together with such other circumstances as may be relevant. . . . [T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Barker, 407 U.S. at 533.

## II. McClellan's Speedy Trial Rights

### A.  Length of Delay

The length of the delay acts as a triggering mechanism; a delay of more than a year post-accusation is "presumptively prejudicial" and triggers the Barker analysis.

5

<u>Vermillion</u>, 719 N.E.2d at 1206 (citing <u>Doggett v. United States</u>, 505 U.S. 647, 652 n.1 (1992)). "[W]hen length of delay is considered as a factor in the <u>Barker</u> analysis, this court determines 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" <u>Davis v. State</u>, 819 N.E.2d 91, 96 (Ind. Ct. App. 2004) (citing <u>Doggett</u>, 505 U.S. at 652), <u>trans. denied</u>. Here, the length of time between McClellan being formally accused of the August OWI and when he was first brought in for his initial hearing was two years and five months.[5] This length of delay is sufficient to be considered "presumptively prejudicial" because it stretched seventeen months beyond the triggering point.

### B. Reason for Delay

The delay was due to the court issuing summons and warrants to McClellan at an outdated address. McClellan argues that the State had an obligation to serve him earlier, especially since he was on home detention and the State should have been aware of his correct address. The State argues that the delay was not deliberate and that the trial court found that the State had no affirmative burden to know McClellan's address. While this does not appear to have been a bad faith attempt to hamper the defense, this court has recognized that a delay in serving a defendant once the defendant has moved is a "neutral reason" which "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government

---

[5] The nine months between the traffic stop and the filing of charges are not considered in determining the delay. McClellan concedes that the case was filed within the statute of limitations and McClellan was not formally accused until May 25, 2010, and that is the date relevant to our analysis.

6

rather than with the defendant." Harrell v. State, 614 N.E.2d 959, 964 (Ind. Ct. App. 1993), trans. denied. Here, the State's inability to locate McClellan after McClellan moved caused the delay. We do not suggest that it requires a Herculean effort on the part of the State to locate a defendant when the defendant has provided the State with his address and then moves;[6] only a reasonable effort is required for the delay not to be attributable to the State. See Bowman v. State, 884 N.E.2d 917, 920 (Ind. Ct. App. 2008) ("When the State has made reasonable efforts to locate an arrestee, it cannot be found at fault for delay caused by the accused's disappearance."), trans. denied; Harrell, 614 N.E.2d at 966 ("[W]e concluded that the government is more to blame for the delay because it presented no evidence that it had attempted, with reasonable diligence, to serve the warrant or to find [the defendant]."). Under these particular facts, where the State had actual notice of McClellan's address because he was on home detention through the same court in the same county, the reason for the delay is attributable to the State.

### C. Assertion of Right

McClellan first asserted his right to a speedy trial when the court was hearing arguments on his motion to dismiss on January 10, 2013. Prior to that hearing, McClellan was asserting only that his due process rights were violated so there were two months when he could have argued this claim, but did not. McClellan could not have asserted his rights in the nearly two and a half years before he was brought to trial. Therefore, the assertion

---

[6] We recognize the incentive for an arrestee to relocate and essentially "hide out" for a year and then claim a deprivation of the right to a speedy trial if we held the State always responsible for locating the defendant.

7

of his right neither weighs for or against McClellan since it was not until the hearing on the motion to dismiss that he presented this claim.

## D. Prejudice to McClellan

When analyzing prejudice to a defendant in the context of the speedy trial right, we must consider three particular interests: preventing oppressive pretrial incarceration; minimizing anxiety and concern of the accused; and limiting the possibility of impairing the defense. Barker, 407 U.S. at 532. The most important of the three is limiting the possibility of defense impairment. Id. The burden is on the defendant to show actual prejudice to prove a speedy trial deprivation. Sturgeon v. State, 683 N.E.2d 612, 617 (Ind. Ct. App. 1997), trans. denied. If the delay between the filing of an information and the arrest of the defendant exceeds the statute of limitations for the crime, the "defendant is no longer required to produce evidence of actual prejudice; it is presumed subject to being rebutted by the state, i.e., once prejudice is presumed, the burden shifts to the State to go forward with evidence to rebut the presumption." Scott v. State, 461 N.E.2d 141, 145 (Ind. Ct. App. 1984). Here, McClellan was not required to show actual prejudice due to the length of time between the filing of charges and McClellan's arrest (two years, five months, when the statute of limitations was two years). The State though has not had an opportunity to rebut the presumption of prejudice in this case. If the State is able to rebut the presumption of prejudice, this factor may then weigh against McClellan in the analysis. It is the responsibility of the trial court to administer this balancing test. Therefore, we remand to the trial court to hold a new hearing on McClellan's motion to dismiss using the balancing test set forth herein and determine whether McClellan's motion should be

8

granted.

## Conclusion

We remand to the trial court to hold a new hearing on McClellan's motion to dismiss based on the speedy trial right using the four-factor balancing test established by Barker v. Wingo and its progeny and to determine whether McClellan's motion to dismiss should be granted.

Remanded.

BARNES, J., and BROWN, J., concur.